[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: CONSENSUAL TERMINATION
These matters were originally presented to this court for a contested coterminous trial on December 9, 2002. Prior to the commencement of evidence, the respondent father Miguel A. (Miguel) and the respondent mother Alicia F. (Alicia) filed written pleas of nob contendre as to two counts of neglect concerning their biological daughter, Chasidy A., born February 2002. At the same time, both respondents filed written consents to the termination of their parental rights (TPR) as to Chasidy. This court canvassed both respondents as to the voluntariness of their nob contendre pleas as to the neglect counts and as to their decision to consent to the termination of their parental rights. After a thorough canvass of both Miguel and Alicia, who were both represented by competent counsel, this court accepted the nob contendre pleas and the consents to the termination of parental rights.
Afterwards, the court heard testimony from DCF social worker Cynthia Verganwen and reviewed the social study. The court also reviewed and approved the permanency plan. The plan called for a TPR and an adoption of Chasidy. The court also found that further efforts to reunify Chasidy with either respondent were inappropriate and that DCF had made reasonable efforts to achieve their plan.
The court has also reviewed the amended petition. This court has jurisdiction over the pending case. Notice of these proceedings has been provided in accordance with the applicable provisions of the Practice Book. No action is pending in any other court affecting custody of Chasidy.
The TPR petition was initially sought on the sole ground that both respondent parents had failed to rehabilitate themselves and that both respondent parents had previously had their parental rights to another child terminated. On 12/9/02, the Assistant Attorney General (AAG) successfully motioned the court to amend the petition to add further CT Page 633 grounds.
The court finds that the below listed facts were proven by clear and convincing evidence.
On 2/4/02, DCF received a referral from Arlene Pereira, a St. Mary's Hospital social worker, regarding a newborn female, Chasidy, weighing 5 pounds six ounces. The respondent mother, Alicia, admitted that she used crack cocaine and heroin during her pregnancy. Alicia reported that she used for three months of her 34 week pregnancy. Alicia was involved with drug treatment at Connecticut Counseling. Chasidy was born methadone positive. Chasidy remained in the nursery and was having possible methadone withdrawal.
A Protective Service check in Link and CMS indicated that this family has a previous history with DCF. Alicia has a son, Anthony, who is placed in DCF care. The respondent father Miguel also has a daughter, Aisha who is placed in DCF care. Both children were removed from their parent's care due to domestic violence and substance abuse issues. Alicia and Miguel have not fully addressed their substance abuse issues and have not completed substance abuse counseling.
Alicia is currently in substance abuse treatment at CT Counseling. Alicia admits that she has a substance abuse issue and that she goes one time per day for methadone. She reports that she last used heroin on May 12, 2002.
On 2/7/02, DCF spoke with social worker Arlene Pereira, who reported that the baby is showing signs of withdrawal, but is ready for discharge.
On 2/8/02, DCF was advised by Kristen Birmingham of Connecticut Counseling, who reported that Alicia has had positive drug screens-her most recent positive screen was on 12/18/01. Alicia admitted to using seven bags of heroin daily. Since 11/14/01, Ms. Birmingham offered Alicia inpatient treatment, but Alicia refused and continued to use illicit drugs. Alicia was aware that she was unable to control her use of illicit drugs and was unable to control her addiction on an outpatient basis.
On 12/11/01, Alicia was offered a bed at Connecticut Valley Hospital and refused a higher level of care She was warned about possible DCF intervention, but minimized it. On 1/23/02, Alicia reported that she had used heroin 48 hours before her session. Once again, a higher level of substance abuse care was offered to Alicia and she refused to follow through with Connecticut Counseling's recommendations. CT Page 634
On 2/8/02, DCF sought and obtained an Order of Temporary Custody (OTC) on behalf of Chasidy. On the same date, they also filed the coteminous petition. The OTC was sustained on 2/15/02.
The social study provided the following information concerning the respondents and the child.
Alicia born in 1973 and has two sisters. Alicia did not offer much information about her family life except that her relationship with her siblings was "good". Alicia describes her childhood as "not good". Alicia has reported that both of her parents as well as both of her sisters are substance abusers. She stated that they would all use drugs together. Alicia has also reported that she does not have anyone to turn to for emotional support and that in order to maintain a drug free lifestyle, she must not associate with her family members.
Alicia reports that her father was incarcerated for some time, yet did not disclose the reason for his incarceration, nor his date of birth. According to DCF history, Alicia's mother was involved with DCF for reasons of neglect in regards to another daughter.
Alicia reports that she completed the tenth grade in the Waterbury Public School System. She reports that she held various "odd jobs" and worked at a bakery throughout her teen years. She is currently employed part-time in Waterbury, CT. Alicia reports that she never married and never served in the military.
Alicia has a significant arrest history and a significant substance abuse history. Alicia had been involved with DCF in 1993, when there were three substantiated referrals regarding Alicia's neglect of her son, Anthony. The concerns included domestic violence between Alicia and her boyfriend in front of Anthony, her oldest son.
On 5/3/01, the Superior Court for Juvenile Matters granted a petition for the Termination of Parental Rights regarding Alicia and Miguel on behalf of their son Miguel, Jr. The grounds for termination of parental rights were abandonment, failure to rehabilitate, and no on-going parent child relationship.
Alicia continues to abuse illicit substances even though she is involved with substance abuse treatment. Alicia has admitted to getting high as recently as 5/17/02. She has not submitted to urine drug screens at the request of her substance abuse counselor. Alicia has signed two UDS refusal forms. The form states that by signing the form, the patient CT Page 635 is aware that it counts as a positive urine screen result.
Miguel was born in 1967. DCF does not have any social history regarding him. This social worker has had a difficult time setting up telephone contact with Miguel in order to get information regarding his social history. Miguel is currently incarcerated at Cybulski Correctional Institution in Enfield, CT. He was incarcerated on 2/19/02 for Burglary in the Second Degree. His maximum release date is 8/27/05.
Miguel has a significant criminal history and a significant substance abuse history. Miguel has also been involved with DCF regarding two previous children. The allegations were physical abuse, neglect, domestic violence and substance abuse. Miguel has a daughter, Aisha. Aisha was in the foster care system for two years before being returned to her biological mother's custody. Aisha is in the care of her biological mother, and the DCF case has been closed for two years. Miguel also has a son, Miguel, Jr. On 5/3/01, the Superior Court for Juvenile Matters granted a petition for the Termination of Parental Rights regarding Alicia and Miguel on behalf of their son Miguel, Jr. The grounds for termination of parental rights were abandonment, failure to rehabilitate, and no on-going parent child relationship.
Miguel is currently incarcerated. He is not scheduled to be released from prison until 8/05. On 5/23/02, this social worker spoke with Norma Buckley at Cybulski Prison. Ms. Buckley reported that since Miguel was transferred to this facility on 5/9/02, he has not requested any Page 4 of 7 services such as individual counseling, parenting classes or substance abuse counseling.
Chasidy was born on 2/02 in Waterbury, CT. She weighed 5 lbs. 6 oz. at birth. Chasidy was born prematurely, at 34 weeks gestation. Chasidy tested positive for methadone at birth and she experienced methadone withdrawal. Chasidy is currently placed in a DCF foster home that is licensed to care for children who have complex medical needs. The current foster parents would like to adopt Chasidy if she becomes available for adoption.
Chasidy is being monitored by Birth to Three for developmental delays. Chasidy has experienced tremors as a result of being exposed to cocaine and heroin in utero. She also does not like to be rocked in a rocking chair or cradle. The foster mother has also reported that Chasidy is inconsolable when she is away from the foster home for any length of time. CT Page 636
CGS Sec. 17a-112 (k) exempts a consensual termination from the necessity of the seven written findings. However, even with a consent, the court must conduct a hearing to determine by clear and convincing evidence that termination is in the best interests of the child.
For the reasons stated below, the court finds that the TPR issues have been proven against Alicia and Miguel by clear and convincing evidence. The court finds in favor of the petitioner State of Connecticut and DCF.
In view of the fact that both respondent parents have consented to the termination of parental rights, the court finds that this is a ground for the TPR. Both parents were thoroughly canvassed as to the knowingness and the voluntariness of their decisions. Both parents were represented by competent counsel thorough these proceedings.
Additionally, the State has alleged that both respondent parents of Chasidy, a child under the age of seven years who is neglected or uncared for, have failed or are unable or are unwilling to achieve such a degree of personal rehabilitation as would encourage the belief that, within a reasonable period of time, considering the age and needs of the child, they could assume a responsible position in the life of Chasidy and such parents' parental rights of another child, specifically Miguel, Jr., were previously terminated pursuant to a petition filed by the Commissioner of the Department of Children and Families.
The social study, which was entered as a full exhibit, concisely discusses both parents' long battle with substance abuse. In addition to the above listed information, the report also states that:
 On 5/22/02, DCF spoke with Diane Hayward at Connecticut Counseling. She reported that Alicia self reported use of illicit substances on 5/15/02. Alicia stated that she used illicit substances on 5/12/02 and 5/13/02. Alicia did not say what drugs she had used. Ms. Hayward stated that she requested that a urine screen be conducted on 5/17/02, however, Alicia did not attend the program that day. On 5/20/02, and 5/22/02 urine screens were again requested, however, Alicia could not produce a urine sample. She signed off on a UDS form, which in essence is considered to be a positive urine result.
Both respondent parents have long histories of substance abuse.
Alicia signed specific steps, which included substance abuse treatment, on 2/15/02. Miguel was incarcerated, so apparently no steps were completed. CT Page 637
The court finds that by clear and convincing evidence that neither Alicia nor Miguel, as parents of Chasidy, a child under the age of seven years who is neglected or uncared for, have failed or are unable or are unwilling to achieve such a degree of personal rehabilitation as would encourage the belief that, within a reasonable period of time, considering the age and needs of the child, they could assume a responsible position in the life of Chasidy and such parents' parental rights of another child, specifically Miguel, Jr., were previously terminated pursuant to a petition filed by the Commissioner of the Department of Children and Families.
In reference to this ground, the social study holds:
 Mother: Alicia has two other children that are not in her care and custody. Anthony resides with his biological father. Alicia has had her parental rights terminated regarding [Miguel], Jr. Alicia has a long history of substance abuse. She has participated in substance abuse counseling several times. Alicia has been unable to maintain sobriety and continues to use illegal drugs even though she is involved in substance abuse counseling.
 Father: Miguel also has two other children that are not in his care and custody. Aisha resides with her biological mother. Miguel's parental rights were terminated in regards to his son, [Miguel], Jr. Miguel is currently incarcerated and he is not expected to be released until 8/05. On 5/23/02, this social worker spoke with Norma Buckley at Cybulski Correctional Institution. She informed this social worker that Miguel has been at the prison since 5/9/02 and has not requested to participate in any services in order to complete his court ordered expectations. Miguel also has a long history of substance abuse.
The court finds this evidence to be credible and that it satisfies the burden of proof by clear and convincing evidence.
The amended social study indicates that Alicia and Miguel have failed to rehabilitate themselves. Alicia has failed to submit to random drug testing and refrain from substance abuse. Miguel has failed to kept his whereabouts known to DCF, participate in individual counseling, submit to substance abuse assessment, sign releases, submit to random drug testing and avoid involvement with the criminal justice system.
DCF has offered Alicia a variety of services, including casework services, transportation for visitation, substance abuse treatment, parenting classes, and the Healthy Choices program. Although Miguel was incarcerated, he had the opportunity to take advantage of various CT Page 638 programs through DOC, including individual counseling, parenting classes or substance abuse counseling, but failed to do so. Their previous TPR should have provided additional notice of the problems that they needed to rectify in order to be parents.
The respondent parents show no signs of rehabilitating themselves in the future. In their present state, their habits and vices have rendered them incapable of properly raising Chasidy and incapable of providing for her physical, educational, moral or emotional well-being. They have failed to achieve such a degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the children, that they could assume a responsible position in the life of the children. They have already had their paternal rights terminated as to another child. Chasidy cannot wait for these parents to rehabilitate themselves.
Both parents have not made realistic and sustained efforts to conform their conduct to even minimally acceptable parental standards. Giving them additional time would not likely bring their performance as parents within acceptable standards sufficient to make it in the best interest of the child to be reunited. Alicia and Miguel have had opportunities to rehabilitate themselves, but have failed to do so.
Long term foster care is not in the child's best interests, in view of her need for permanency. She require stability of placement and continuity of care. Obviously, this would be unobtainable if she were in their parents' care and dominion.
Chasidy was born on 2/02. She is extremely young and completely dependent upon a responsible, nurturing caregiver. She has a need for stability and permanence in order to grow up to be a stable adult. Given Chasidy's age and her parents' inconsistent level of care and emotional availability, it would be unfair to subject her to further uncertainty about her future. Alicia continues to use illicit substances even though she is involved in substance abuse counseling. Miguel is incarcerated and is not scheduled to be released until 8/05. It is very unlikely that the parents will ever be able to provide the care and stability that a young child needs. The time needed to form parental bonds would be traumatic.
Alicia has a long history of substance abuse. She used illicit substances throughout her pregnancy. Alicia continues to use illicit substances even though she is involved with substance abuse treatment. It does not appear that Alicia will be able to remain substance free in order to regain custody of her child. CT Page 639
Miguel is incarcerated at this time. He is not scheduled to be released until 8/05. Miguel will not be able to provide physical care for his child until the child is almost four years old, even if he were about to rehabilitate himself. Miguel has also had a long history of substance abuse.
Chasidy is an infant. She relies on a stable, consistent caretaker. She perceives the people who care for her on a daily basis to be her psychological parents. These people are her foster parents. Chasidy has bonded emotionally to her foster parents. Chasidy's foster mother has reported that after visits, Chasidy appears to be out of sorts. She is cranky and upset. Chasidy is hard to soothe after her visits for about two to three hours after returning to her foster home. Chasidy is placed in a legal risk, pre-adoptive placement. The foster parents will adopt Chasidy once she is legally free for adoption.
Counsel for Chasidy indicated that it was in her best interests for the parents' parental rights to be terminated and for Chasidy to be adopted. He indicated that Chasidy was doing well in her foster home and that it was hoped that the foster parents would adopt her. The AAG agreed with these positions.
SW Verganwen, testifying as an expert witness, indicated that Chasidy's pre-adoptive foster home and foster parents were very nurturing. The foster parents must participate in physical therapy with Chasidy. Verganwen testified that the foster parents are the only parents that the child has ever known and that the parents wish to adopt her. Verganwen opined that this adoption would be in Chasidy's best interests.
This court agrees.
Based upon the evidence produced at the hearing, it is clear that termination of parental rights is in Chasidy's best interests. The court finds that the State has proved this by clear and convincing evidence.
Therefore, the court finds that based upon the credible evidence and testimony presented, that it would be in the best interest of Chasidy to terminate Alicia and Miguel's parental rights a this time. This finding is made after considering Chasidy's sense of time, her need for a secure and permanent environment, the relationship that she has with her foster parents and the totality of circumstances.
It is accordingly ORDERED that the parental rights of Alicia F. and Miguel A. are hereby terminated as to their child Chasidy A. The Commissioner of the Department of Children and Families is hereby CT Page 640 appointed the statutory parent. A permanency plan shall be submitted in accordance with the law. The court would recommend that primary consideration for adoption of Chasidy shall be offered to her current foster parents, if deemed appropriate.
JUDGEMENT MAY ENTER ACCORDINGLY.
Taylor, J. CT Page 641